The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. We know that our students are going to have to leave after the third argument. We've been really happy to have you with us, and the lawyers in the fourth case will not be offended because they know you have to make a bust, so it's no reflection on their coming argument. Counsel, we're happy to hear from you. Thank you, Judge Motz. Good morning. My name is Emily Harrell. I represent Mr. Norman. I'd like to just put on the record briefly that I am upset that apparently none of these students will be attending the College of William & Mary. Shame on them. I'm sure they were all admitted. We are here this morning for two issues regarding Mr. Norman's conviction and sentencing. The first has to do with the unconstitutional search and seizure of materials from a vehicle in which Mr. Norman was sitting on the day of his arrest, and the second has to do with the legal argument regarding the use of his prior 846 conviction as a controlled substance offense, which enhanced his sentence under 2K2.1. As to the Fourth Amendment issue, the entirety of Judge Hurlong's ruling as to the inability of the evidence was, it was a proper, this is on page 205 of the Joint Appendix, quote, it was a proper search which was incident to an arrest, and based on the testimony also, they had probable cause to search because of the testimony that there was, in plain view, evidence of drugs in the car. The search incident to arrest is bad because under Arizona v. Gant, Mr. Norman was detained and away from the vehicle. He had been arrested on a supervised release violation warrant, and so there would be no evidence of an unknown at this point. There's no evidence in the record of what the supervised release violation was. There was no evidence in the vehicle of that violation, and he was detained and away from the car. When the deputy took him out of the car, he searched his pockets and found nothing but cash and a cell phone. But they arrested the passenger or the other person in the car. They did, Your Honor. Well. I'm sorry, go ahead. They arrested her. She had some cocaine in her hair. She did. Couldn't they search it at that point? It would appear so. Well, then maybe you should go into your second argument. Thank you very much. The issue about the use of the 846 conviction as a I want to ask you a follow-up question on that. Yes, sir. Is the timing clear of when they found the evidence in her hair in context of when the firearm was seized? No. Well, then the record have to show or the judge have to find that they discovered the evidence in her hair or maybe the evidence on the console of the car before they seized the firearm. If you're right on the fact they couldn't do it on the arrest of him. Yes. I wouldn't give up that seizure point. Okay. Thank you, Your Honor. You need some timing, temporal relationships, I think. Yes, and the one officer who Does the record show that they found the evidence in her hair before they seized the gun? I would argue not because the officer who was the initial officer who may have been involved in all this, McCleary, did not testify in this matter. And so each of the officers who came to testify said that they did not speak to either the defendant, Mr. Norman, or to the passenger. And they spoke briefly, one officer spoke briefly to McCleary. Don't know what was said. Don't know when the search of the passenger actually took place relative to when they found the gun in the vehicle. Did the officers testify that they saw what they thought was they found the package of what it was in the car before they arrested him and the cash? They saw some white stuff on the console. They saw some white stuff on the console. And the $1,200 in cash, a bundle of cash. The problem is, is that what was removed from Mr. Norman's pocket was only, the officer did not count it. And he put it back on the seat. And in the photo, you have a hundred and some odd dollars showing on the seat. And then there's some other amount on the floor. Of the front seat? Yes. Of the front driver's side. Of the driver's side. Yes, Your Honor. That's where the money was. And what I find very interesting is that in one of the photos, I think it's Exhibit 4, you cannot see what appears to be in plain view to the officers at all behind that gear shift. And there is a package. But assume it was. Don't they have to tie it timing-wise to being before they seized the firearm? I'm not sure I understand your question. Well, you have to have something wrong before you can have the proper cause to search the vehicle. That's why I asked you, leave aside for a moment how much it was and how much they knew. Did they see what they thought was a packet of drugs and a bunch of money before they searched? Searched the vehicle? Yes, going to the timing question that Judge King is asking. They had to go up under the seat to get the firearm, which was wrapped up in a do-rag. Correct. All right. Did they know at that time that the white substance was on the console, that the cash was spread out? Well, to that point, Your Honor, the officers do not testify that. The judge didn't talk about that in his recitation. Right. And the officers don't testify this happened before that. Had they found the cocaine in her hair before they went up under the seat? That is not clear from the record. If they did either of those two, I'd sort of divide them into two things, if they did either one of those things, then that might support. And if it's not clear from what the judge said, are we entitled to look at the transcript and figure it out for ourselves? Or have you all helped us figure it out for ourselves if you're willing to admit that, according to the testimony, it all happened before they went under the seat? If it did and it all went under the seat, that may dispose of the seizure question. And then we've got to deal with the controlled substance issue on 846. But if the seizure is bad, we never get to this controlled substance issue. Isn't that correct? That's correct. Never have to consider that question. So you have to lose on the seizure before he gets to argue about the controlled substance. He gets to stand up right after you and tell us what the timeline is so that the best you can do for yourself right now is establish that whatever he's going to say is wrong, right, about this timeline? Correct. And I do not think that the record is clear enough to be able to say that it's clear in the record as to when things happened. To be candid, the gun was not discovered on the first search that one officer did, and it wasn't until another officer. What's the first search? Well, I would imagine that that was a plain view search. Is this the one that went under the seat? No, it was officer. All right, so you're still not to the one, but the one under the seat's the one you're challenging, where they found the gun. Well, yes, but I mean, I would warrant that the entire. Yeah, you don't want any of that evidence. Right, I mean, I would warrant the entire search of the vehicle was bad under Arizona v. Gantt. But, and again, because it's. Look, the firearm is bad. That's what gets you the problem. Isn't that right? The sentencing problem. Well, correct. Yes, that's that's true. The 922 G and the and the 924 C conviction. So, oh, the 922 G. What is the record? You said the record is not clear. What? All right. What if what if we agree with you? The record is not clear. What are we supposed to do? Well, I would imagine that you're going to look at all of the various possibilities under, you know, Arizona v. Gantt, inventory search, plain view, inevitable discovery. And you have to I have to be able to say none of those. Right. And if we agree with you that none of them work, what do we do with the case? Well, you vacate his conviction and send it back to Judge Hurlong. Send it back for what? I would argue to dismiss the entire case, although they I guess the government would still have a witness in Princess. Well, why wouldn't Judge Hurlong be entitled to explain it further or look at the evidence and make further findings on the seizure to assess whether it's still good or not? That is, if if if they found the stuff in her hair before they went under the seat and picked up the gun, that would make the seizure good of the gun. Correct. If they didn't, it might not be. But anyway, why don't you go to this next part? Thank you. I guess it was the government's burden to make the record clear. So the government, if it goes back on that, shouldn't get a second chance. But go back to your go to your sentencing. So the argument about the use of the 846 conviction as a predicate offense qualifying for an enhancement under 2K2.1 is that under McCollum under Dozier, McCollum and Whitley, Whitley, of course, is unpublished. That a conspiracy. Yes, sir. Under that line of cases, an 846 conviction does not qualify as a controlled substance offense based on conspiracy being overbroad under the contemporary meaning. What do you do with all the dicta in these other cases from which the government heavily relies? Involving this particular statute. Well, what do you do with it is that it's dicta. You know, the express holdings of those cases were not contingent upon determining whether conspiracy under a categorical analysis. I'm not sure they're dicta like Judge Wilkinson's case. It was necessary for his holding in that case. It's not. It's not. That's not the definition of dicta. Are you talking about the Kennedy case? Yes. Well, as I said in my 28 J letter, it's a little murky in Kennedy because Mr. Kennedy's offensive conviction was an 846 conviction. And because the definition of instant offense in the guidelines is broader than perhaps a narrow definition of controlled substance offense, that naturally would include, you know, relevant conduct, which would include a distribution or possession with intent to distribute, that sort of thing, so that you get to use that. I mean, the specific holding of Kennedy was that it qualifies as an instant offense. Now, you don't get there unless you find that it, you know, meets the definition of controlled substance offense. Then it's not dicta. If it's necessary, it's not dicta. That's the point I was getting to. What were you going to say? I was going to say it's dicta in the sense that the two holdings of Kennedy were that it qualifies as an instant offense and that the sentencing commission had the broader authority under 994A to include conspiracies in the definition of a controlled substance offense. It doesn't answer the question about whether under an analysis via the categorical approach the offense qualifies as meets the generic definition of controlled substance offense. Thank you. Thank you. So where do we learn about timing? Your Honor, may it please the Court, I'd like to clarify that just a little bit. Sure. Because I believe the Joint Appendix does, in fact, give more clarity on the timeline than perhaps the Court has heard so far. We've got it here. We're ready to look at where to tell us. Your Honor, I think it's first important to understand that Officers Longshore, who arrived on the scene, and Officer McCleary, along with Deputy U.S. Marshall and McPoland, were there to execute an arrest warrant. They were, in fact, warrant deputies. They were not narcotics officers. In Officer Longshore's testimony, he makes clear that he had approached the driver, Mr. Norman. He had asked him to step out of the car and conducted a pat-down. On the other side of the car, McCleary and McPoland were doing the same thing with Ms. Harrison. At that point, they found cocaine. So show me in the record what it tells me about time. Absolutely, Your Honor. Okay. I would point to, so at that point, we have on page 76 of the record, Officers Harbin and Luther and Roper were narcotics officers. The warrant officers, once they found drugs, called in the narcotics officers. At the top of page 76, Officer Harbin testifies, Sergeant Roper advised me that warrant deputies were out serving warrants and they had come across a substance they believed to be narcotics and were going out to assist them. She rode along with Sergeant Roper and Sergeant Luther, and when they got there, the passenger, Ms. Harrison, had been searched, and they found a baggie in her hair, which she self-admitted was cocaine, and then we conducted a search of the vehicle. There is no evidence in the record that the vehicle was searched before the cocaine was found on Ms. Harrison's person. We know that it was Officer Roper who found the firearm. And, Your Honor, we should talk about Gant a little bit, but also the elephant in the room here, which is the automobile exception. When they found a bag of cocaine in Ms. Harrison's hair, which she admitted was cocaine, they had, at that point, they could have searched the car incident to her arrest. She was arrested for possession of that cocaine for further evidence of that drug within the car. Gant is quite clear about that. But, at that point, they had cocaine in hand, and they also had probable cause, under the automobile exception, to search the interior of the vehicle and every compartment within it. But, Your Honor, it's clear that they found the cocaine before they seized the firearm. Yes, Your Honor, I do believe that's clear. You do believe it's clear. Are you… It says, and then we conducted a search of the vehicle. I don't believe, Your Honor, I will… And Roper's the one that found the gun. That's correct, Your Honor. And he wasn't there when they had found the substance they believed to be cocaine. I believe that that's what the record says. That's what it indicates on JA-76. That's correct. And there's no evidence in the record that's contrary to that testimony. I would only point out one thing. The record is not a model of clarity. So that's what you're relying on Judge Horlong meaning when he said it was incident to arrest. Yes, Your Honor, and admittedly, it's abbreviated holding, but he does find that there is a search incident to arrest, which is valid, and additionally, there was probable cause for the search. This court, of course, may affirm for any reason in the record, irrespective of what the district court found, but I believe based on the testimony, based on the argument, based on the judge's holding, that both the automobile exception and the search incident to arrest exception, as articulated in Gantt, make that clear. One point I want to make about Gantt. Gantt revisited the doctrine of search incident to arrest and gave two justifications, the first being officer safety and evidentiary concerns, but the second being that officers, when they arrest an occupant of the vehicle, that they then may search the car pursuant to any evidence, looking for any evidence of the crime of arrest. And, of course, we have a drug arrest here. The court in Gantt also, though, rearticulated its longstanding holding in Ross and in Carroll and the automobile exception cases that those were not abrogated in any way by the opinion in Gantt. This court in United States v. Baker has since discussed Gantt in the context of the automobile exception. That case is, regrettably, not in our briefing. It's one that I came across in preparation for oral argument, but I would point to that case as a good analog here. In that case, like here, the car was approached, the driver and the passenger were asked to step outside of the vehicle. The passenger was then searched. There was cocaine on the passenger, and this court held that the officers thereby, under the automobile exception, had probable cause to search the entire vehicle and all the compartments within it. So it would be our position that under either the automobile exception or the search incident to Ms. Harrison's arrest, that the district court should be upheld on that issue. I'll now turn to the question, if there are no further questions on the first issue, the question of whether 846 is a controlled substance offense. Is there any reason why McCollum's analytical approach does not apply here? Yes, Your Honor. What is that reason? We can distinguish those cases. No, no, no. I'm asking McCollum. Right. Which is our very recent 2018 case. That is correct. That is correct. So two points in response. First of all, we are here on a plain-error review. And so, as this court said only a month ago in Chavez-Lopez, which was authored by Judge Diaz, that this area of the law remains open. And it's not so plainly settled that it would be error for the – or plain error. I think I understand your plain-error argument. Sure, of course. So we'll move to the issue. To whether it was error at all. That's correct. So I think that the Ninth Circuit lays out a process by which McCollum can be distinguished. Okay. There, in that case, in Garcia-Santana, the Ninth Circuit conducted a categorical analysis of the generic crime of conspiracy and, like in McCollum, found that it required an overt act. In fact, in McCollum, on page 308 of that opinion, it cites Garcia-Santana. So you would agree that the categorical approach applies here? No, I would not, Your Honor. No, you don't. Because of the second case from the Ninth Circuit, which I was about to get to. A year after Garcia-Santana, the Ninth Circuit looked to the question of 846 specifically. And in that case, in Rivera-Constantino, it found that it need not conduct a categorical approach because the commission's intent was quite clear. And, Your Honor, there's precedent in this circuit in Judge King's opinion from Medina-Campo. It makes clear that we start whether the intent from the commission is clear. And if it is – Yeah, but that was a different – that was a different issue in that case. It was a different issue, but the fundamental principle about construction of the guidelines that we interpreted as a statute to give effect to the commission's intent remains true here. But so you – I just want to be sure I understand the foundation of your argument. You agree that generally we apply the categorical approach even when we're dealing with the guidelines? That's correct. Okay. But this is a special exception to that? Your Honor, when the guidelines' intent is clear from the language of the guidelines, the court need not conduct a categorical analysis. I believe that that's true. Well, if the guidelines said you needed an overt act or said you didn't need an overt act, we would know what the intent was. Absolutely. But it doesn't say either one of those things, does it? Well, Your Honor, if I may walk you through the steps, I believe that those cases are – those questions – It doesn't require an overt act, does it? It does not – it does not say one way or the other. Okay. And generally an overt act is required in the common law, correct, for conspiracy? That – not in – actually, not in the common law. In the common law, there is no overt act requirement. Okay. But in the generic Ellen analysis – The generic – I take your point. There would be. A requirement of an overt act. Now, where does this generic definition come from? The generic definition, as conducted by McCollum, looked at all the State statutes and all the Federal statutes. And while the broad majority of Federal statutes do not require an overt act, the majority of State statutes do. In fact, the model penal code does not – So Congress hadn't created a – No, Your Honor. An overt act requirement for all conspiracies, for a generic conspiracy. That's correct, Your Honor. In fact, 846 does not say whether it does or does not. But you don't – I didn't think, from reading your papers, that you made the argument that it was wrong to say that the generic definition of a conspiracy contained an overt act. That's not right. What you're saying, it doesn't – We're not challenging that principle. You're not making that argument. Okay. And so – but let me make the argument, if you will, about the language here and how we believe it reflects the answer. But McCollum wanted an 846 conspiracy. That's correct, Your Honor. 846 conspiracy. So controlled substance offense is defined – It was a different conspiracy, though. That's correct. It was a conspiracy. It was a conspiracy. It was a 1959 conspiracy. That's correct. It wasn't even a 371 conspiracy. It did not involve – It was a conspiracy to commit murder, wasn't it? That's correct. So it sounds a lot more serious. Well, possibly. It's a different type of analysis. Well, it could be that there were, what, there were 20 or 30 different conspiracy objects in 1959. So under – Here there's only one. And that's correct. How does that cut? So in McCollum, this Court said that there are 51 violent conspiracy statutes in the Federal Code. Some of those require overt acts. Some do not. There are only two controlled substance conspiracies in the Federal Code, 846 and 963. The definition of controlled substance – What was the second one? 963, importing and exporting. Conspiracy to import and export, Your Honor. The definition of controlled substance offense substantively says that it includes manufacturing, dispersing, dispensing, which are the 843 categories, and then exporting and importing, which are 963. They precisely overlay. The language of the guidelines and the commentary says that Federal or State law qualifying conspiracies are controlled substance offenses. There are only two Federal controlled substance conspiracies. Neither require an overt act. So to adopt the position that Appellant puts before this Court is to say that the Commission defined controlled substance offense to include Federal drug conspiracies and yet really intended to exclude the only two drug conspiracy statutes in the Federal Code. That's why we believe that controlled substance offense 846 conspiracy is distinguishable from Federal crimes of violence. Crimes of violence, there are 51 conspiracy statutes in the Federal Code. Not all of them require an overt act. And so it was not as clear to the Court. And in that case, a categorical approach was, Your Honor, appropriate. And so we believe those two. I think that's probably a good argument, but I didn't understand it. So maybe my colleagues did. So there are only the two statutes, and I'm not sure where I get from A to B here. So in Title 21. Because you and I agree the sentencing guidelines could. Right. Could require an overt act or could say no overt act is necessary. We don't disagree that if the Commission wanted to put 846 expressly in there, it could do that. And it may well have to do that if the cases continue in this pattern. Right. But, Your Honor, we do not need to go that far. We presume the Commission to understand case law. We can look at the language of the guidelines. We can look at the language of the commentary and see that it cannot be that the Commission intended to exclude the only two Federal drug conspiracy statutes from the definition of controlled substance offense, which it said is Federal, includes Federal law, and includes conspiracies. But, you see, I think that argument proves too much for you because I don't know why that argument wouldn't do away with the categorical approach for everything. We look at the intent they intended to do. Well, there's absolutely a limiting principle here. And we would point to that. And what's the limiting principle? The limiting principle would be if it's not clear from the language whether there is an overt act intended or not. In McCollum, for instance, the 51 statutes, the 160 Federal statutes at large, not all of them had a commonality of requiring an overt act or not. And so it wasn't as easy to kind of look at the language of the guidelines and have proof of what the Commission intended and then to give effect to that proof. It was not as clear. And so I think one of the issues that's come up in briefing, not just in this case but in other cases, is there's clearly this tension between Kennedy and Walton in that line of cases and McCollum. What I would like to put before the Court, though, is a third way that this Court can issue a published opinion that does not disparage either line of cases, that does not have to, you know, based on the prior panel analysis, it doesn't have to even cast any doubt on those cases. It can distinguish those cases, just as the Ninth Circuit did in Rivera-Constantino, where it didn't simply stand on the precedent of Garcia-Santana and say, hey, well, just because we have done a categorical analysis of conspiracy, that forecloses the 846 issue here. The Ninth Circuit was able to distinguish those cases. This circuit can do the same. The Fifth Circuit, additionally, has taken this position as well as the Sixth Circuit in terms of looking at the plain language of 846 and saying, we need not go further. We believe that it is evident that the Commission intended 846 to be a controlled substance offense, and therefore, we're not going to conduct a categorical analysis here. Your Honor, I'd like to make one additional point about the categorical analysis and particularly the two-step categorical analysis that was articulated in Dozier for first articulating the elements of the generic Incahoate crime and then separately the substantive offense. I believe that a reading of Dozier indicates that that opinion is cabined in some respects with respect to general Incahoate crime statutes. The opinion is quite plain that it is wrestling with the unique complexity, in the opinion's words, of a general attempt statute. And, in fact, the central holding of the case, the quote is, whereas here a generic attempt statute includes all or almost all of the State's substantive crimes, we must conduct both an elements analysis of the Incahoate attempt as well as the underlying substantive crime. I believe that Dozier is best read as cabined by that analysis to general attempts or general conspiracy statutes, and is not so sweeping as to foreclose every other potential means of review when we are looking at an attempt, a solicitation, a conspiracy, some other Incahoate way of getting at an underlying substantive offense. One other point I would like to make about Dozier. In Dozier, this Court, of course, articulated the elements of a general attempt. The case in which it relied on, Your Honor, was a case that you authored in United States v. Neal, Judge Motz. And in United States v. Neal, the elements of attempt that were articulated there were the elements of 846. 846 attempt, as this Court is well aware, 846 not only outlaws conspiracy, it outlaws attempt. And so what we have right now in this circuit is that the elements for 846 are in alignment with the generic Incahoate elements as identified in Dozier. So if this Court has not ruled so yet, I believe it is inescapable that 846 will, in fact, be a controlled substance offense. And now we will be in a position, if Norman prevails, where 846 attempt is a controlled substance offense, but 846 conspiracy is not. Your Honor, I would suggest to the Court that this cannot be what the Commission intended, that a single statute that's not divisible by subparts would be both a controlled substance offense and not a controlled substance offense. And so that is just one further point that I would put before the Court as to the problems with the appellant's position here. What about the second prong of Olano plain error, the plain part? The question of whether it's plain. Yes. Yes, Your Honor. I mean, I don't believe it can reasonably be said that this matter is fairly squarely foreclosed, that it is plain or obvious at all in this case. We have no published decision. We've got a case of plain error, one that's plain or obvious or something that jumps off the page. Well, Your Honor. Part of that comes from the Supreme Court, I think, part from us. Right. It would have to satisfy this is a plain error review. I mean, if we assume there's error, can they get over the plain part? Your Honor, assuming there is any error at all, and, of course, we dispute that there is. I understand. Just like in Chavez-Lopez, there has been nothing to indicate that this issue is squared away. Now, the appellants have made some issue out of Walton and Kennedy and the fact that — No, but Judge Diaz in that Whitley, whatever the name of his case, he disposed of it on the second prong. So, Your Honor — Is that not right? So, Whitley was actually per curiam. Judge Diaz authored Chavez-Lopez, which was the case that found that there was no plain error. So in that case, yes, I mean, Whitley has a number of issues. It's unpublished. It is per curiam. And, of course, it did not attempt, as the Court recognized in Chavez-Lopez, to distinguish Walton and Kennedy. Judge Diaz. Name's on it. That's — my understanding is that Chavez-Lopez is a Diaz opinion. I'm not — I don't know what I'm — I'm talking about the one that Judge Diaz wrote. That's — and that's correct. That would be Chavez-Lopez, where the Court found that while McConnell was good law, Walton and Kennedy are good law, it's clear that this is an issue — we say candidly that this is an issue that the Court is struggling with. This is the second time this term and the third time this year that this Court has visited this issue. It may, in fact, have to visit that issue again. And it would be our position that it will require a decision of this Court en banc or a decision of the United States Supreme Court, I think, to finally put clarity to this particularly thorny question. And, Your Honor, I see I'm about out of time. If there's no further questions, we would respectfully ask that this Court affirm the district court. Thank you. So, Ms. Harrell, you heard your colleague's argument, which I thought was a little different than the argument in the brief, but maybe I just didn't understand the argument in the brief, but a little more sophisticated. Apparently, he isn't saying that the categorical approach doesn't apply when you're dealing with sentencing guidelines, which — anyway. So maybe — how can you help us? How can you address what he said? Certainly, Your Honor. Could I just go back to the timing issue just briefly? You can, but you've got to know — Just briefly. You only have an X amount of time. It looks like it's less than five minutes. There are two citations in the Joint Appendix, the testimony of Deputy Longshore, where he says on the bottom of page 33, It's very unclear as to found some what where. And also on page 49, the direct testimony of Deputy Luther, they had located an individual and was wanted on a warrant of some type, and they had found contraband inside the car that would be applicable to what we would investigate. There's nothing there about they found something on Ms. Harrison outside the car and then in the car. They found something in the car. As to his argument about the Ninth Circuit case indicating that the intent of the sentencing commission is clear, that's an assumption based on no authority because the word is there, conspiracy. The intent is clear, is not backed up by any background material or other citation to other cases, that sort of thing. So I would warrant that the intent is not entirely clear. Mr. Andrews makes much of the fact that there are only two drug conspiracy, federal drug conspiracy statutes, and surely it's clear that conspiracy would cover those. But unfortunately, the definition of conspiracy goes to both. It doesn't differentiate in the guidelines and say, well, conspiracies as to drug offenses or conspiracies as to crimes of violence. It just says conspiracies. And so you have an offense which covers both crimes of violence and controlled substance offenses. And so it doesn't matter. Your contention, then, is it doesn't matter that there are just these two. Correct. Because, as opposed to all these other statutes, because conspiracy definition itself covers a whole raft of things. That's correct. Or the lack of definition, if you will. The lack of definition. Conspiracy assignation. I just briefly wanted to address the plain error issue. I think the error is plain after Dozier and McCollum. You agree that it's plain error review? Yes, sir, I do. Even though the pre-sentence report identifies in its written text that his conviction was conspiracy, it notes in the description of the offense that the probation officer wrote it doesn't list the 846 statutory reference. And so it was perhaps not recognized. It's got to be convicted of 841. Right. Yeah. So I would say that the error is plain after Dozier and McCollum. Dozier says that with an offense listed in the attempt aiding and abetting in conspiracy situation, you have to conduct a categorical analysis. McCollum very clearly takes on that analysis based upon a conspiracy to commit murder under RICO, and therefore the Whitley panel had no problem saying that an enhanced sentence may follow a conviction for an inchoate crime only if the defendant's conviction necessarily established. You know, applying this analysis, Whitley's prior conspiracy convictions do not qualify. Chavez-Lopez, you know, Judge Diaz makes the notices in the back that it's, you know. You're saying it's so obvious it jumps off the page? Absolutely. Absolutely. And, therefore, I believe plain error under Molina-Martinez and Rosales-Morales would warrant correction. If we can go back to the search, even though I called you off it a few minutes ago, I do recognize that. If we should find that the record isn't clear with respect to this, with respect to the timing, as my friend Judge King says, then what are we to do? I think the conviction should be vacated, and he should be able to. My belief is he should be able to go home. Okay. Barring that. You better ask for some alternative. I would. So what was he convicted of? He was convicted of the 922G, a B1C conviction for PWID, heroin and cocaine, and a 924C for the trafficking, possession of the weapon, you know, for trafficking. So the weapon offense is the only thing that would be at issue, right? Well, yes. I mean, there isn't a claim that they – the claim – the basis for this particular claim is that they didn't have a basis to go search the car. Right. But they saw the drugs, what turned out to be drugs, and they saw the money. Right. Right? Well, again, I believe that they did not see the drugs. I think that – I understand. But the district court found that – they testified they did. The district court found they did. Right. Yeah. Well, that's – yes. Okay. So the thing that would be in jeopardy is the gun charge. Correct. Okay. Thank you very much. Thank you. We will come down and say hello to the lawyers. We know our students have to leave, and we thank you for coming.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker